**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| **AL HAGEN** and **CARL CAMPBELL**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**HORMEL FOODS CORPORATION,**<br><br>Defendant. | **Civil Action No.: 0:26-cv-03630**<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Al Hagen and Carl Campbell ("Plaintiffs"), individually and on behalf of the Class defined below of similarly situated persons, allege the following against Hormel Foods Corporation ("Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. It is both unfair and unlawful for entities like Defendant to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges Defendant's unlawful practice of charging a "tobacco surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. Under ERISA, wellness programs must offer, and provide notice of, a reasonable alternative standard that allows all participants to obtain the "***full reward***"—including refunds for surcharges paid while completing the program. *See* 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). Instead, under Defendant's employee health and

welfare plan, the Hormel Foods Corporation Comprehensive Welfare Benefit Plan (the "Plan"), Defendant imposes a discriminatory tobacco surcharge without providing participants with a reasonable alternative standard that provides them with the full reward. Further, Defendant fails to notify participants of an alternative standard, the completion of which will remove the surcharge and reimburse participants, violating ERISA's statutory and regulatory requirements and depriving employees of their right to avoid the surcharge.

2. Tobacco surcharges have become more prevalent in recent years but to be lawful plans must make available a *compliant* "wellness program" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers ***must*** adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework that "must be satisfied" to qualify for the statutory exception or safe-harbor. Employers can only invoke this safe harbor if they can demonstrate full compliance with all the requirements..

3. ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that allows participants to obtain the "full reward," including retroactive reimbursement of surcharges

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

paid while completing the alternative standard. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Upon information and belief, Defendant's Plan fails to clearly establish a reasonable alternative standard that informs employees of their right to avoid the surcharge, imposes a tobacco surcharge on nicotine users, does not notify employees of their rights to a physician-directed alternative to avoid the surcharge, does not ensure that employees who complete the alternative receive the "full reward," and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

4. The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

5. Outcome-based programs,[3] such as being tobacco-free or completing a smoking cessation program, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[4] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . . ." *Id.*, 33160 (emphasis added). Upon information and belief, Defendant violates these requirements by failing to provide a reasonable alternative standard that provides full reimbursement to employees

---

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[4] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

who complete it, operating a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly notify participants of all the avenues available to them to avoid the surcharge. These failures constitute direct violations of ERISA's wellness program regulations.

6. Defendant cannot qualify for the statutory safe harbor because, while it imposes a health-based surcharge, it does not make available to participants (or notify them of) a compliant wellness program. The Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied," (*Id*., 33160; emphasis added) for a wellness program to be lawful under ERISA. Final Regulations, 33160. The core deficiency of Defendant's wellness program is that it does not offer a reasonable alternative standard that makes available the "full reward" to all participants who complete it, as explicitly required by 42 U.S.C. § 300gg-4(j)(3)(D) and 45 C.F.R. § 146.121(f)(4)(iv). Upon information and belief, while the Plan may offer a smoking cessation program, there is no mention of reimbursement or even avoiding the surcharge on a *prospective* basis. To that extent, Defendant fails to make available a clearly defined, reasonable alternative standard that ensures employees who satisfy that standard receive a full refund of the tobacco surcharges that are deducted from their paychecks. Upon information and belief, Defendant uses these unlawfully obtained funds to offset Defendant's own contributions to the Plan, which allows additional money to remain in Defendant's accounts on which the company earns interest. By increasing participant contributions through this surcharge, Defendant reduces its own contributions to the Plan that would otherwise be required to fund the same coverage, depriving the Plan of employer funds it should have received.

7. By failing to make available an alternative standard or a mechanism for retroactive reimbursement to those who satisfy that standard, Defendant operates an unlawful surcharge scheme that deprives employees who use nicotine of the opportunity to avoid the tobacco

surcharge that is not imposed on non-smokers. This is not a minor technical failure; it is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that participants have a fair and compliant opportunity to be treated the same as non-smokers.

8. Further, upon information and belief, Defendant failed to provide proper notice, which is a standalone violation of 42 U.S.C. § 300gg-4(j)(3)(E) ("The plan or issuer involved shall disclose in ***all*** plan materials describing the terms of the wellness program the availability of a reasonable alternative standard." (emphasis added)). Defendant failed, year after year, to inform participants of their right to have their personal doctor involved in the alternative standard process, as explicitly required by ERISA's antidiscrimination rules. 45 C.F.R. § 146.121(f)(4)(v). *See* Final Regulations, 33166 ("a plan disclosure that references premium differential based on tobacco use . . . must include this disclosure"). These notice violations alone disqualify Defendant from asserting an affirmative defense in response to Plaintiffs' allegations that its tobacco surcharge is discriminatory. Because Defendant cannot qualify for the statutory exception, the tobacco surcharge Defendant imposes on participants is unlawful and discriminatory in violation of ERISA.

9. This Complaint alleges that Defendant imposes a health-based tobacco surcharge without making available a compliant alternative standard to avoid the surcharge. Defendant bears the burden of proving that its tobacco surcharge is lawful by showing that its wellness program fully complies with ***every*** requirement under ERISA, including making available a reasonable alternative standard that allows all participants to avoid the surcharge and receive the full reward if they satisfy that standard. This type of discrimination is permissible only if employers meet strict criteria, which Defendant does not. There is no indication that the wellness program provides the "full reward." Further, even if Defendant does make the "full reward" available to all nicotine-

using participants, it does not tell its participants that. Not informing participants that there are avenues available to them to avoid the surcharge makes the surcharge facially noncompliant. No amount of *post hoc* justifications can cure this fundamental defect. Defendant's Plan is not a "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

10. Participants like Plaintiffs are permitted to challenge a surcharge when there is no clear wellness program offered or when there is no notice of any avenue to avoid the surcharge. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions and alleges facts to support the deficiency in the wellness program, the burden shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ*., 145 S. Ct. 1020, 1029 (2025) (reaffirming "that 'the burden of persuasion as to certain elements of a plaintiff 's claim may be shifted to Defendant, when such elements can fairly be characterized as affirmative defenses or *exemptions*.'").

11. Plaintiffs were employees of Defendant who paid the unlawful tobacco surcharge to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiffs and continues to impose such a burden on those similarly situated.

12. Plaintiffs bring this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Defendant from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendant is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiffs, on behalf of themselves and the Plan as a whole, seek appropriate equitable relief under 29 U.S.C. §§

1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

13. In addition to the violations described above, Plaintiffs bring a claim for statutory penalties under ERISA § 502(c), 29 U.S.C. § 1132(c). On April 8, 2026, Plaintiff Al Hagen submitted a written request to Defendant's HR Department seeking the Summary Plan Description(s), benefits guides, open-enrollment materials, and other participant-facing communications relating to the tobacco surcharge and wellness programs. Under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), a plan administrator is required to furnish requested plan documents within thirty (30) days of a participant's written request. Defendant, as the plan administrator, failed or refused to provide the requested documents within the statutory timeframe. As a result of Defendant's noncompliance, Plaintiffs are entitled to statutory penalties of up to $110 per day for each day of noncompliance, from the date the response was due through the date of compliance or judgment, pursuant to ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B).

## PARTIES

14. Plaintiff Al Hagen is, and at all times mentioned herein was, an individual citizen of the State of Wisconsin residing in Chetek, Wisconsin. Upon information and belief, Plaintiff Hagen was an employee of Defendant, Hormel Foods Corporation, who paid a tobacco surcharge associated with the Plan. Plaintiff Hagen was required to pay this tobacco surcharge to maintain health insurance under the Plan.

15. Plaintiff Carl Campbell is, and at all times mentioned herein was, an individual citizen of the State of Wisconsin residing in Spooner, Wisconsin. Upon information and belief, Plaintiff Campbell was an employee of Defendant, Hormel Foods Corporation, who paid a tobacco

surcharge associated with the Plan. Plaintiff Campbell was required to pay this tobacco surcharge to maintain health insurance under the Plan.

16. Plaintiffs are participants in the Plan pursuant to 29 U.S.C. § 1002(7).

17. Upon information and belief, Defendant Hormel Foods Corporation is organized and existing under the laws of the State of Delaware with its principal place of business in Austin, Minnesota. Hormel Foods Corporation is a multinational food processing corporation headquartered in Austin, Minnesota. Defendant Hormel Foods Corporation is the plan sponsor of the Hormel Foods Corporation Comprehensive Welfare Benefit Plan.

18. At all times relevant to this lawsuit, Defendant sponsored, maintained, and managed the Plan. Defendant employs tens of thousands of individuals. Upon information and belief, there were thousands of participants in the Plan. Defendant's employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

## JURISDICTION AND VENUE

19. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20. This Court has personal jurisdiction over Defendant because Defendant Hormel Foods Corporation is headquartered in Austin, Minnesota, which is within this District. Defendant has purposefully availed itself of the privilege of conducting business in this District.

21. Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because Defendant is headquartered in this District and this is a District in which Defendant may be found.

## FACTUAL BACKGROUND

### I. DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

#### A. Statutory and Regulatory Requirements

22. To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

23. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

24. Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly

reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

25. Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the ACA and Public Health Service Acts, in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

26. The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program satisfies *all* the necessary criteria.

27. The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness

programs do not arbitrarily penalize participants and they prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if <u>all</u> of the [] requirements are satisfied***.").

### B. Regulatory Criteria

28. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

29. The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

30. Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

31. A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive***. . . ." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing

the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

32. The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180.

33. For health contingent wellness programs, the Final Regulations require the notice be disclosed "in ***all*** plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge

their participants more and fail to inform participants of a reasonable alternative standard to the surcharge violate these requirements.

## II. DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

34. Defendant's tobacco surcharge is discriminatory because, upon information and belief, Defendant does not offer any "program[] of health promotion or disease prevention" through which participants may avoid the surcharge. 29 U.S.C. § 1182(b)(2)(B). Defendant instead imposes the surcharge based solely on a participant's tobacco-use status and deducts it from the participant's wages as part of the participant's regular, before-tax Plan contributions.

35. ERISA permits a health-contingent tobacco surcharge only when the surcharge is imposed as part of a wellness program that satisfies every applicable statutory and regulatory requirement. *See* 29 C.F.R. § 2590.702(f)(4). Among other things, the Plan must make available a reasonable alternative standard, allow participants who satisfy that standard to receive the full reward, provide at least one opportunity each year to qualify for that reward, and disclose the availability and terms of the alternative standard in all Plan materials describing the surcharge.

36. The Final Regulations illustrate what a compliant tobacco program requires. In Example 6, tobacco users may avoid the surcharge by participating in a smoking-cessation program, regardless of whether they successfully stop using tobacco. 78 Fed. Reg. at 33180. The program is available without cost, is not unreasonably burdensome, provides access to the full reward, explains how participants may enroll, supplies contact information, and states that the Plan will accommodate recommendations from a participant's personal physician. The premium differential is permissible only because the plan satisfies each of those requirements.

37. Defendant's surcharge bears no resemblance to that compliant program. Upon information and belief, Defendant offers no smoking-cessation program, waiver, or other

reasonable alternative standard through which tobacco users may avoid the surcharge. Participants are not given an alternative path to obtain the full reward and are instead required to pay more for coverage based solely on their status as tobacco users.

38. Consistent with the absence of any wellness program, Defendant does not identify a reasonable alternative standard in the Plan materials describing the tobacco surcharge. Those materials do not explain how to enroll in an alternative program, provide contact information for obtaining one, state that the program is available at no cost, or confirm that completing it will eliminate the surcharge and provide the full reward for the Plan year. A reasonable participant reviewing those materials would understand the surcharge to be mandatory and unavoidable.

39. Upon information and belief, Defendant also does not inform participants that the Plan will accommodate the recommendations of their personal physicians in designing or modifying an alternative standard. Nor does Defendant inform participants that they may receive reimbursement or credit for surcharges paid before completing an alternative standard. These omissions are unsurprising because, upon information and belief, Defendant has no alternative standard or wellness program to disclose.

40. Alternatively, to the extent Defendant contends that some wellness program or cessation resource exists, that undisclosed program does not satisfy ERISA. A program that is not identified in the materials describing the surcharge, cannot be located or accessed by participants, and is accompanied by no explanation of how participants may earn the full reward is not meaningfully "available." An undisclosed program is no program at all for purposes of participants attempting to avoid the surcharge.

41. Upon information and belief, any program Defendant may identify provides, at most, only prospective removal of the surcharge after a participant completes a cessation program,

or reimbursement of the cost of the cessation program itself. Defendant does not provide retroactive, make-whole relief for surcharges already paid during the Plan year. It therefore does not provide the "full reward" required by ERISA.

42. Defendant's failure to provide a wellness program means that it necessarily fails several independent conditions for invoking ERISA's safe harbor. Defendant does not give participants a meaningful annual opportunity to qualify for the reward, does not make the full reward available, does not provide a reasonable alternative standard, and does not disclose the availability of such a standard. See 42 U.S.C. § 300gg-4(j)(3)(C)–(E); 29 C.F.R. § 2590.702(f)(4).

43. Defendant should have implemented a legitimate and accessible smoking cessation program that permitted tobacco users to avoid the surcharge for the entire Plan year regardless of whether they successfully quit smoking. The program should have been offered at no cost, should not have been unreasonably burdensome, and should have provided the full reward through reimbursement, credits, or appropriate adjustments to participants' required contributions.

44. Defendant also should have included clear and specific notice of the reasonable alternative standard in every Plan material describing the tobacco surcharge. That notice should have explained the alternative standard, provided instructions and contact information for accessing it, stated that completing the alternative would provide the full reward, and advised participants that the Plan would accommodate recommendations from their personal physicians.

45. Had Defendant provided that information, Plaintiffs and other participants could have taken steps to avoid the surcharge. Instead, Defendant gave participants no reason to believe that they had any option other than quitting tobacco altogether or continuing to pay the surcharge. Defendant thereby deprived participants of the information and opportunity necessary to make informed decisions regarding their health coverage and financial obligations.

46. Defendant's surcharge is therefore not part of a bona fide program designed to promote health or prevent disease. It is an impermissible premium differential imposed because of a health factor. By collecting the surcharge without providing an actual and compliant wellness program, Defendant transformed the asserted safe harbor into a subterfuge for discrimination and a mechanism for shifting Plan costs to participants.

47. Allowing employers to collect substantial sums from tobacco users while offering no genuine means of avoiding the charge would defeat ERISA's antidiscrimination protections and place employers that disregard the law in a better position than employers that devote the resources necessary to establish compliant wellness programs. Because Defendant does not satisfy the statutory and regulatory requirements, it cannot invoke ERISA's safe harbor.

## III. DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

48. Defendant administered the tobacco surcharge by determining which participants would be charged and withholding the surcharge directly from participants' paychecks as a before-tax Plan contribution, alongside their required premium contributions. These deductions were part of the funding stream for Plan coverage, not separate penalties, and were treated in the same manner as other participant contributions used to fund the Plan's medical benefits. Once withheld from participants' wages, the surcharge amounts became Plan assets.

49. Upon information and belief, Defendant committed to contribute a defined company contribution amount toward the cost of coverage, with participants responsible for paying the balance. By imposing a tobacco surcharge on top of participants' required contributions, Defendant created what should have been a third stream of funding available to the Plan: (1) participants' required premium contributions; (2) Defendant's company contributions; and (3) the

additional tobacco-surcharge contributions. Upon information and belief, however, Defendant did not permit all three funding streams to increase the resources available to the Plan. Instead, Defendant used the surcharge amounts to reduce or offset the company contributions it otherwise would have made. Upon information and belief, Defendant had a responsibility to ensure there was a threshold amount of funds available and would contribute to ensure that threshold was met. Therefore, each dollar collected through the surcharge reduced, dollar-for-dollar, the amount Defendant was required to contribute to the Plan; rather than increasing the resources available to the Plan, the surcharge shifted Plan costs from Defendant to participants.

50. This practice constitutes classic self-dealing because Defendant manipulated the Plan's funding structure to generate savings for itself and deprived the Plan of the full benefit of the separate funding streams it should have received. Defendant's actions caused the Plan to lose employer contributions it otherwise would have received and permitted Defendant to retain the corresponding corporate funds for its own benefit, in violation of ERISA's fiduciary-duty standards.

51. In doing so, Defendant failed to act solely in the interests of participants and beneficiaries, as ERISA requires. Rather than use the surcharge contributions for the exclusive purpose of providing Plan benefits or defraying reasonable Plan expenses, Defendant used those contributions to reduce its own funding obligations. The corresponding amounts that Defendant avoided contributing remained in Defendant's corporate accounts, where Defendant retained the use of those funds and any interest, investment returns, or other financial benefits they generated. Meanwhile, the Plan was deprived of employer contributions it otherwise should have received. Defendant's use of Plan assets to reduce its own obligations constitutes self-dealing, violates the duty of loyalty, and constitutes a prohibited transaction under ERISA §§ 404 and 406.

## CLASS DEFINITION AND ALLEGATIONS

52. Plaintiffs bring this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

53. Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

54. Excluded from the Class are Defendant's officers and directors.

55. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

56. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

57. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

58. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

b. Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

c. Whether Defendant provided the notice in ***all*** the plan materials describing the surcharge;

d. Whether Defendant provided the required statement that participants' personal physicians' recommendations would be accommodated;

e. Whether Defendant's wellness program violates ERISA and the Final Regulations;

f. Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge;

g. Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its wellness program and the communications sent to participants to ensure compliance with ERISA and applicable regulations;

h. The appropriate mechanisms to determine damages on a class-wide basis

59. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharges. Moreover, Plaintiffs' claims are typical of the Class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

60. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

61. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual

Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

62. Plaintiffs seek injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiffs and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

## COUNT I

## UNLAWFUL SURCHARGE – FAILURE TO PROVIDE A REASONABLE ALTERNATIVE STANDARD

**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA 2705, 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. § 146.121(f)(4)(iv))**

63. Plaintiffs re-allege and incorporate herein by reference allegations 1–61 of this Complaint.

64. ERISA prohibits group health plans from requiring participants to pay more for coverage based on a health-status-related factor. 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-

4(b)(1). Tobacco use is a health-status-related factor. Defendant's tobacco surcharge is therefore unlawful unless Defendant satisfies every condition of the narrow statutory and regulatory exception for health-contingent wellness programs. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. §§ 300gg-4(b)(2)(B), 300gg-4(j)(3); 29 C.F.R. § 2590.702(f)(4).

65. Among those mandatory conditions, Defendant must make available a reasonable alternative standard through which all similarly situated participants may obtain the same, full reward available to participants who satisfy the Plan's initial tobacco-use standard. 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv). The full reward cannot be limited to prospective removal of the surcharge or otherwise reduced based on when a participant satisfies the alternative standard during the Plan year.

66. Upon information and belief, Defendant does not offer any smoking cessation program, waiver, or other reasonable alternative standard through which participants who use tobacco may avoid the surcharge. Defendant instead requires participants to pay increased contributions based solely on their tobacco-use status without providing an alternative means of obtaining the reward.

67. Because Defendant makes no reasonable alternative standard available, participants are not given a meaningful opportunity to qualify for the reward and cannot obtain the same, full reward available to similarly situated participants who do not use tobacco.

68. Alternatively, to the extent Defendant contends that some cessation program or other alternative standard exists, upon information and belief, that program does not provide the full reward required by ERISA. At most, Defendant provides prospective removal of the surcharge after completion or reimburses only the cost of participating in a cessation program. Defendant

does not reimburse or credit participants for all surcharges paid during the Plan year before completion of the purported alternative standard.

69. Whether Defendant provides no alternative standard or provides only an alternative that fails to make available the full reward, Defendant does not satisfy the requirements of 29 U.S.C. § 1182(b)(2)(B), 42 U.S.C. § 300gg-4(j)(3)(D), and 29 C.F.R. § 2590.702(f)(4)(iv). Defendant therefore cannot invoke the wellness-program exception

70. The resulting tobacco surcharge is an unlawful differential in the cost of coverage based on a health-related factor, in violation of 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4(b).

71. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans ***must*** comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

## COUNT II
## UNLAWFUL SURCHARGE – FAILURE TO PROVIDE REQUIRED NOTICE
## (Violation of 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v))

72. Plaintiffs re-allege and incorporate herein by reference allegations 1–61 of this Complaint.

73. ERISA prohibits group health plans from requiring participants to pay more for coverage based on a health-status-related factor. 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-

4(b)(1). A tobacco surcharge is therefore unlawful unless Defendant satisfies every condition of the narrow statutory and regulatory exception for health-contingent wellness programs. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. §§ 300gg-4(b)(2)(B), 300gg-4(j)(3).

74. To qualify for that exception, Defendant was required to disclose the availability of a reasonable alternative standard in ***all*** Plan materials describing the terms of the tobacco surcharge. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v).

75. The required notice must inform participants that a reasonable alternative standard (or, where applicable, a waiver) is available, explain how participants may obtain the alternative, provide contact information for doing so, and state that the recommendations of a participant's personal physician will be accommodated where medically appropriate. *Id.* These disclosures must appear in every participant-facing Plan material describing the premium differential.

76. Upon information and belief, Defendant's Plan materials described the tobacco surcharge without disclosing the availability of any reasonable alternative standard, waiver, smoking-cessation program, or other means by which participants could avoid the surcharge. Those materials did not explain how to access an alternative standard, identify whom participants should contact, or state that Defendant would accommodate recommendations from participants' personal physicians.

77. Defendant's Plan materials also did not inform participants that satisfying a reasonable alternative standard would entitle them to the same, full reward available to participants who satisfied the Plan's initial tobacco-use standard, including reimbursement or credit for surcharges previously paid during the Plan year. A reasonable participant reviewing those materials would understand the surcharge to be mandatory and unavoidable.

78. These omissions are consistent with Plaintiff's allegation that, upon information and belief, Defendant did not offer any reasonable alternative standard or compliant wellness program to disclose.

79. Alternatively, to the extent Defendant contends that some cessation program or other alternative standard existed, Defendant failed to disclose that program and its material terms in all Plan materials describing the surcharge. An undisclosed alternative that participants cannot identify, locate, or access does not satisfy ERISA's notice requirements.

80. Defendant's failure to provide the prescribed notice independently prevents Defendant from invoking the wellness-program exception, regardless of whether Defendant satisfied any other statutory or regulatory requirement.

81. The resulting tobacco surcharge is an unlawful differential in the cost of coverage based on a health-status-related factor, in violation of 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4.

82. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes Plaintiff and Class Members to seek appropriate equitable relief to enjoin Defendant's unlawful practices, redress Defendant's violations, and enforce ERISA. Plaintiff and Class Members are therefore entitled to appropriate equitable relief, including restitution, disgorgement, surcharge, an accounting, declaratory relief, and such other relief as the Court deems just and proper.

## COUNT III
## BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)
## (Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109; Brought Under 29 U.S.C. § 1132(a)(2))

83. Plaintiffs re-allege and incorporate herein by reference allegations 1–61 of this Complaint.

84. At all relevant times, Defendant was a fiduciary of the Plan because it exercised discretionary authority and control over the administration of the Plan and the management and disposition of Plan assets, including participant contributions collected through the tobacco surcharge. 29 U.S.C. § 1002(21)(A).

85. ERISA required Defendant to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

86. Defendant exercised fiduciary authority by determining which participants would be charged the surcharge, collecting the surcharge through before-tax payroll deductions, controlling the use and disposition of the surcharge contributions, and communicating with participants concerning the surcharge and any means of avoiding it.

87. Once withheld from participants' wages, the surcharge contributions became Plan assets. Upon information and belief, rather than use those assets solely for the benefit of the Plan and its participants, Defendant used the surcharge contributions to reduce or offset the employer contributions it otherwise would have made to fund Plan benefits.

88. The Plan should have received three separate funding streams: (1) participants' required premium contributions; (2) Defendant's employer contributions; and (3) the additional tobacco-surcharge contributions. Upon information and belief, Defendant instead used the third

funding stream to displace the second. The surcharge therefore did not increase the resources available to the Plan but shifted Plan costs from Defendant to participants.

89. By using Plan assets to reduce its own funding obligations, Defendant acted in its own financial interest rather than solely in the interests of participants and beneficiaries. Upon information and belief, Defendant retained not only the surcharge proceeds but the corresponding corporate funds in its own accounts and obtained the use of those funds, including any interest, float, investment returns, or other financial benefits they generated.

90. Defendant also breached its fiduciary duties in administering and communicating the surcharge. Upon information and belief, Defendant controlled and distributed Plan materials describing the tobacco surcharge without informing participants that a reasonable alternative standard was available, explaining how to obtain one, stating that participants could receive the full reward, or disclosing that recommendations from participants' personal physicians would be accommodated.

91. Alternatively, to the extent Defendant contends that some cessation program or other reasonable alternative standard existed, Defendant failed to prudently administer or communicate that program. Defendant did not make it meaningfully accessible, did not adequately disclose it in the materials describing the surcharge, and did not ensure that participants who satisfied it received the same, full reward.

92. Defendant further failed to conduct a prudent and periodic review of the surcharge's administration, the handling of surcharge contributions, and the communications provided to participants. Defendant thereby permitted the collection and use of discriminatory surcharges to continue year after year for its own financial benefit.

93. Defendant's conduct violated ERISA's duties of loyalty and prudence because Defendant administered the surcharge for its own benefit, failed to safeguard and properly use participant contributions, and failed to provide participants with material information necessary to understand and exercise their rights under the Plan. 29 U.S.C. § 1104(a)(1).

94. Defendant's conduct also constituted prohibited transactions. Defendant caused Plan assets to be transferred to, or used for the benefit of, a party in interest—namely, itself—in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D). Defendant also dealt with Plan assets in its own interest or for its own account, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

95. As a result of Defendant's breaches, the Plan was deprived of employer contributions it otherwise should have received. Defendant separately obtained profits and other financial benefits through its use of the surcharge contributions and the corporate funds it retained.

96. Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## COUNT IV
## BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)
## (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106; Brought Under 29 U.S.C. § 1132(a)(3))

97. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein, including the allegations concerning Defendant's fiduciary status,

administration of the tobacco surcharge, use of Plan assets for its own benefit, and failure to provide participants with material information concerning their ability to avoid the surcharge.

98. Defendant breached its fiduciary duties of loyalty and prudence by administering and communicating the tobacco surcharge for its own financial benefit rather than solely in the interests of Plaintiffs and other Plan participants. Defendant collected the surcharge from Plaintiffs' wages while failing to make available or disclose a compliant reasonable alternative standard through which Plaintiffs could obtain the full reward.

99. Alternatively, to the extent Defendant contends that a cessation program or other alternative standard existed, Defendant failed to administer or communicate it prudently. Defendant did not provide Plaintiffs with the information necessary to identify, access, and complete the purported alternative or to understand that they could obtain the full reward and that recommendations from their personal physicians would be accommodated.

100. Because of Defendant's fiduciary breaches, Plaintiffs did not know that the surcharge was avoidable or what steps they could take to avoid it. Plaintiffs were therefore deprived of a meaningful opportunity to exercise their rights under the Plan and paid unlawful surcharges that otherwise could have been avoided or recovered.

101. Defendant retained and used the amounts deducted from Plaintiffs' wages for its own benefit. Plaintiffs consequently lost both the surcharge amounts and the use of those funds, while Defendant obtained corresponding financial benefits through its possession and use of the money.

102. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs and the Class seek appropriate individual equitable relief necessary to redress Defendant's fiduciary breaches, including restitution, equitable surcharge, disgorgement, an accounting, the imposition of a

constructive trust or equitable lien over traceable funds or profits, declaratory relief, and such other appropriate equitable relief as the Court deems just and proper.

## COUNT V
## FAILURE TO PRODUCE REQUESTED DOCUMENTS – STATUTORY PENALTIES
**(Violation of ERISA §§ 104(b)(4) and 502(c)(1)(B),**
**29 U.S.C. §§ 1024(b)(4) and 1132(c)(1)(B))**

103. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

104. ERISA § 104(b)(4) requires a plan administrator, upon written request from a participant or beneficiary, to furnish copies of the latest updated summary plan description, the latest annual report, and other instruments under which the plan is established or operated. 29 U.S.C. § 1024(b)(4).

105. On April 8, 2026, Plaintiff Al Hagen, acting through counsel, submitted a written request to Defendant, the Plan administrator, seeking documents concerning the Plan and the tobacco surcharge. The requested documents included, among other things, the governing Plan documents, the summary plan descriptions and amendments in effect during Plaintiffs' participation, and materials setting forth the terms governing the Plan's tobacco surcharge and any related wellness program.

106. Plaintiffs also requested benefits and enrollment materials, participant-facing communications concerning the tobacco surcharge, and payroll records reflecting the health-insurance contributions and surcharges deducted from their wages.

107. Plaintiff Al Hagen sent the request to Defendant's Human Resources Department. The request identified Plaintiff Hagen as a Plan participant and provided the information necessary for Defendant to locate and produce the requested documents.

108. At a minimum, the request sought the latest updated summary plan description and the governing documents and instruments under which the Plan was established or operated, which Defendant was required to furnish under 29 U.S.C. § 1024(b)(4).

109. Defendant was required to comply with Plaintiff Hagen's request within 30 days. Plaintiff Hagen subsequently made multiple follow-up inquiries concerning the outstanding documents.

110. Defendant did not produce the requested Plan documents by May 8, 2026, and, as of the filing of this Complaint, has neither produced the documents nor provided a substantive response to Plaintiff Hagen's request.

111. ERISA § 502(c)(1)(B) authorizes the Court, in its discretion, to impose penalties against a plan administrator that fails or refuses to provide information required by § 1024(b)(4) within 30 days after a participant's written request. 29 U.S.C. § 1132(c)(1)(B).

112. Accordingly, Defendant is liable for statutory penalties of up to $110 per day beginning after the expiration of the 30-day response period and continuing through the date of compliance or judgment.

113. Plaintiffs also seek an order requiring Defendant to produce all documents required to be furnished under ERISA § 104(b)(4), together with reasonable attorneys' fees and costs under ERISA § 502(g), 29 U.S.C. § 1132(g), and such other relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and request that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharge;

D. A declaratory judgment that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to notify participants of an alternative standard, and for failing to adequately monitor the terms of the Plan, the surcharge, and the wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all surcharge amounts Defendant collected;

I. Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J. Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law;

L. An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Statutory penalties under 29 U.S.C. § 1132(c)(1)(B), of up to $110 per day for each day of noncompliance with Plaintiff Hagen's written request for plan documents, from the date the response was due through the date of compliance or judgment;

N. An Order compelling Defendant to produce the documents requested by Plaintiff Hagen pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4);

O. Any other relief the Court determines is just and proper.

Dated: August 14, 2026

Respectfully submitted,

/s/ Philip J. Krzeski

**CHESTNUT CAMBRONNE PA**
Philip J. Krzeski (MN 0403291)
100 Washington Ave S, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Email: pkrzeski@chestnutcambronne.com

**SIRI & GLIMSTAD LLP**
Oren Faircloth (pro hac vice forthcoming)
William H. Payne (pro hac vice forthcoming)
100 Pearl Street
14th Floor - #16946876
Hartford, CT 06103
Tel: (212) 532-1091
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com

*Attorneys for Plaintiffs and the Proposed Class*